**NOT FOR CITATION**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EDDIE E. LAYMAN,

    Petitioner,

    v.

DERRAL G. ADAMS, Warden,

    Respondent.

No. C 03-4121 PJH (PR)

**DENIAL OF PETITION FOR WRIT OF HABEAS CORPUS**

This is a habeas corpus case filed pro se by a state prisoner pursuant to 28 U.S.C. § 2254. The court ordered respondent to show cause why the writ should not be granted. Respondent has filed an answer and a memorandum of points and authorities in support of it, and lodged exhibits with the court. Petitioner has responded with a traverse. For the reasons set out below, the petition will be denied.

## BACKGROUND

Petitioner was convicted by a jury of two counts of forcible oral copulation and one count of forcible rape. Ex. 6 (Opinion of California Court of Appeal) at 1. Petitioner filed a motion for new trial claiming ineffective assistance of counsel. *Id.* at 2. Following a hearing, the court denied the new trial motion and sentenced petitioner to a term of thirty-seven years to life in state prison. *Id.* at 1-2. The California Court of Appeal, Sixth Appellate District, affirmed the conviction and sentence, and the California Supreme Court denied his application for review.

Wendy Doe, the seventeen-year-old victim, was interested in getting a tattoo, so her friend introduced her to petitioner, a tattoo artist. Ex. 1 (Reporter's Transcript) at 219-20. After giving her the tattoo, petitioner and Wendy started getting together to smoke methamphetamine. *Id.* at 229. Petitioner did not charge Wendy for the drugs or for the

tattoo. *Id.* at 227, 229. The night before the assault, petitioner called her and demanded that she pay for the tattoo. *Id.* at 243.

The next night, as Wendy was eating food with her friends in a parking lot, petitioner drove up and parked next to them. *Id.* at 260. He threatened to hit Wendy for not paying him for the tattoo and ordered her to get into his car. *Id.* at 262, 267. She got into his car, and they drove to a secluded parking lot. *Id.* at 267-68. Petitioner gave Wendy some methamphetamine and told her to smoke it. *Id.* at 269. They drove to another parking lot where petitioner forced Wendy to orally copulate him and then raped her. *Id.* at 282-85. After the rape, petitioner forced her to orally copulate him again. *Id.* at 285-86. Petitioner then drove Wendy back to her friends. *Id.* at 291-92.

Further relevant facts will be set out in the discussion below.

## STANDARD OF REVIEW

A district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). The first prong applies both to questions of law and to mixed questions of law and fact, *Williams (Terry) v. Taylor*, 529 U.S. 362, 407-09 (2001), while the second prong applies to decisions based on factual determinations, *Miller-El v. Cockrell*, 123 S. Ct. 1029, 1041 (2003).

A state court decision is "contrary to" Supreme Court authority, that is, falls under the first clause of § 2254(d)(1), only if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams (Terry)*, 529 U.S. at 412-13. A state court decision is an "unreasonable application of" Supreme Court authority, falling under the second clause of § 2254(d)(1), if it correctly

2

identifies the governing legal principle from the Supreme Court's decisions but "unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. The federal court on habeas review may not issue the writ "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411. Rather, the application must be "objectively unreasonable" to support granting the writ. *Id.* at 409.

Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary." *Miller-El*, 123 S. Ct. at 1041. This presumption is not altered by the fact that the finding was made by a state court of appeals, rather than by a state trial court. *Sumner v. Mata*, 449 U.S. 539, 546-47 (1981); *Bragg v. Galaza*, 242 F.3d 1082, 1087 (9th Cir.), *amended*, 253 F.3d 1150 (9th Cir. 2001). A petitioner must present clear and convincing evidence to overcome § 2254(e)(1)'s presumption of correctness; conclusory assertions will not do. *Id.*

Under 28 U.S.C. § 2254(d)(2), a state court decision "based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El*, 123 S. Ct. at 1041; *see also Torres v. Prunty*, 223 F.3d 1103, 1107 (9th Cir. 2000). An unreasonable determination of the facts occurs where the state court fails to consider and weigh highly probative, relevant evidence, central to petitioner's claim, that was properly presented and made part of the state-court record. *Taylor v. Maddox*, 366 F.32 992, 1005 (9th Cir. 2004).

**DISCUSSION**

Petitioner contends that he was denied effective assistance of counsel when his trial counsel failed to: (1) tell him about the plea offer; (2) investigate the DNA evidence used by the prosecution; (3) investigate other defenses; and (4) impeach a witness with prior inconsistent statements.

The adequacy of trial counsel's performance was explored at length at the hearing on petitioner's motion for a new trial based on ineffective assistance of counsel. On direct appeal, petitioner presented a claim for ineffective assistance of counsel to the state courts,

3

but that claim was based on his counsel's advice to him not to testify at trial. Consequently, as respondent correctly points out, petitioner's four claims of ineffective assistance as grounds for habeas relief have not been exhausted. Nevertheless, a petition for habeas relief may denied on the merits despite a petitioner's failure to exhaust all of the state court remedies available to him. 28 U.S.C. § 2254(b)(2).

   *1. Standard*

A claim of ineffective assistance of counsel is cognizable as a claim of denial of the Sixth Amendment right to counsel, which guarantees not only assistance, but effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result. *Id.*

In order to prevail on an ineffective assistance claim, petitioner must establish two things. First, petitioner must show that counsel's performance was deficient, i.e. that it fell below an "objective standard of reasonableness" under prevailing professional norms. *Id.* at 687-88. Judicial scrutiny of counsel's performance must be highly deferential, and a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *If.* at 689. Second, petitioner must establish that he or she was prejudiced by counsel's deficient performance, i.e., that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.* If the petitioner cannot establish incompetence under the first prong of *Strickland*, then a federal court considering a habeas ineffective assistance claim does not have to analyze prejudice under the second prong. *Siripongs v. Calderon*, 133 F.3d 732, 737 (9th Cir. 1998).

   *2. Failure to Inform Petitioner About a Plea Offer*

Petitioner claims that counsel was ineffective because she did not inform him about the prosecution's plea offer. He argues that had he been aware of the plea deal, he would

4

1   have accepted it and not gone to trial. Although he did not present this claim to the
2   California Court of Appeal or the California Supreme Court, he did raise it at the hearing on
3   his new trial motion. Ex. 1 at 1526. At the hearing, petitioner asserted that he did not find
4   out about the plea offer until after his conviction. *Id.* at 1526-27. He claimed that his
5   attorney did not tell him about it because "she didn't feel [he] would have taken the deal
6   anyway." *Id.* at 1527.

7   Trial counsel testified that before trial began, she brought up the option of taking a
8   deal, but petitioner had refused to discuss it, maintaining that he was innocent and that
9   admitting to any felony would result in an additional ten-year prison sentence due to his
10  suspended sentence from a prior offense. *Id.* at 1554-55. Counsel also stated that on the
11  first day of trial, she again told petitioner about the prosecution's eight-year offer, and again
12  petitioner rejected it, making a raspberry noise and saying "no." *Id.* at 1553. Furthermore,
13  the record shows that the prosecutor made the eight-year plea offer in front of the petitioner
14  and in open court. *Id.* at 52-53. At the hearing on the new trial motion, petitioner admitted
15  under cross-examination that he was sitting just ten feet away from the prosecutor when
16  the settlement offer was made, but he claimed he was not paying attention and argued that
17  counsel should have made the offer clear to him. *Id.* at 1539-40. Counsel testified,
18  however, that as the prosecutor stated the plea offer for the record, petitioner looked right
19  at him and shook his head no. *Id.* at 1553-54.

20  The trial court heard the conflicting testimony and denied the motion for new trial,
21  holding that there was effective representation by the trial counsel before, during, and after
22  the trial. *Id.* at 1569. The record and counsel's testimony strongly indicate that petitioner
23  knew about the plea offer. Consequently, the state court's implied factual determination
24  that petitioner knew about the plea offer was not objectively unreasonable in light of the
25  evidence presented, *see* 28 U.S.C. § 2254(d)(2), and the state court's conclusion that
26  counsel was not ineffective was not contrary to, or an unreasonable application of, clearly
27  established United States Supreme Court authority, *see* 28 U.S.C. § 2254(d)(1).
28  ///

*3. Failure to Investigate the DNA Evidence*

The prosecution introduced into evidence DNA from a semen stain found on Wendy's shirt. Although there was an anomaly as to the VWA allele, the expert witness disregarded that result in calculating the odds of the sperm coming from anyone other than petitioner, ex. 1 at 1021, 1031, which was one in a trillion, *id.* at 1033, 1046. Petitioner claims that his attorney was ineffective by failing to retest and properly investigate this DNA evidence. This claim is meritless.

At the hearing on the motion for new trial, counsel testified that after the DNA test was conducted, she contacted the prosecution's expert twice and asked about the possible weakness of the DNA evidence. *Id.* at 1562. The expert explained that this anomaly did not cast doubt on the validity of the results. *Id.* at 1033. The anomaly could be thrown out without affecting the calculation of the statistical probability. *Id.* Counsel also testified that she insisted that the DNA be tested a second time. *Id.* at 1564.

As discussed above, the trial court denied petitioner's motion for new trial, concluding that there was no ineffective assistance of counsel. *Id.* at 1569. Given the testimony at the hearing, petitioner has neither established that the trial court's implied findings were unreasonable, nor has he established that counsel's performance fell below an "objective standard of reasonableness" under prevailing professional norms. The state courts' rejection of this claim was not contrary to, or an unreasonable application of, clearly established Supreme Court authority.

*4. Failure to Investigate Other Defenses*

Petitioner claims that his counsel was ineffective because the only defense that she focused on at trial was that no sexual contact took place between the petitioner and Wendy. Petitioner contends that counsel should have argued that sexual contact did take place but that it was consensual. This claim is meritless.

Counsel testified that after investigating the DNA evidence, she informed petitioner about what the prosecution was going to present at trial. *Id.* at 1561. She stated that she discussed with petitioner the possibility of claiming that he had consensual intercourse with

6

Wendy, which would explain the presence of the semen on the shirt. *Id.* at 1554, 1562. However, petitioner was adamant that no sexual contact took place, maintaining that even consensual sex was a felony because Wendy was a minor. *Id.* at 1554. Counsel testified that if petitioner had taken the stand, he would have testified that there was no sexual contact. *Id.* at 1563-64. She said that the first time he told her that sexual contact took place was three weeks after the trial ended. Moreover, the prosecution offered into evidence a statement that petitioner made to the police in which he repeatedly stated that he never had sex with Wendy, ex. 2 (Clerk's Transcript) at 302, which could have made testimony to the contrary look like a lie.

Petitioner's refusal to admit that sexual conduct took place made it impossible for counsel to pursue a consensual sex defense. Counsel testified that she was "in no position to argue consent." Ex. 1 at 1565. Nevertheless, in her closing argument, counsel did offer that the sexual contact was consensual as a possible alternative theory for the jury to consider. *Id.* at 1436. She explained that she offered this theory as "something for [the jury] to latch onto in case they wanted to compromise on something." *Id.* at 1565.

Counsel's testimony was that she investigated other defenses and focused on the no sexual conduct defense only after no other defense was available, explained to petitioner the strength of the DNA evidence, and unsuccessfully attempted to convince him that a better defense would be that the sexual contact was consensual. The trial court held that she was not ineffective. *Id.* at 1569. In light of counsel's testimony, petitioner has not established that the implied finding of fact that petitioner would not allow the consensual-sex defense was unreasonable, nor has he established that the state courts' rejection of this claim was contrary to, or an unreasonable application of, clearly established Supreme Court authority.

   *5.   Failure to Impeach a Witness*

Petitioner claims that counsel's performance was deficient because she failed to impeach Wendy with her prior inconsistent statements and to bring out inconsistencies in her testimony. This claim is contrary to the record.

7

During Wendy's cross-examination, counsel brought out several inconsistencies in Wendy's testimony. After Wendy testified that on the night of the assault she brought the money for the petitioner, counsel pointed out that her sister had testified that Wendy did not have the money with her that night. *Id.* at 350. When Wendy testified that she and petitioner spent an hour to an hour and a half together, counsel called attention to her sister's testimony that Wendy had been gone for just ten to fifteen minutes. *Id.* at 385-86. Counsel further emphasized this discrepancy about the timing of the sexual assault during her closing argument. *Id.* at 1400. She stressed that the four witnesses who saw Wendy leave with petitioner testified that she was not gone for an hour. *Id.* at 1422-23.

During her closing argument, counsel also pointed out that Wendy told "different stories" about what happened on the night of the assault. *Id.* at 1407. When speaking to the police, Wendy gave varying accounts about petitioner's threats with a screwdriver. *Id.* at 1407-09. Counsel noted that even though Wendy testified that petitioner forced her to smoke methamphetamine on the night of the assault, she told the police that the pipe that she used belonged to her. *Id.* at 1414. Counsel also emphasized that Wendy gave different versions about the sexual contact that occurred between her and petitioner. *Id.* at 1410-12.

Petitioner has not demonstrated that counsel's performance fell below an "objective standard of reasonableness" under prevailing professional norms. The state courts' rejection of this claim was not contrary to, or an unreasonable application of, clearly established Supreme Court authority.

## CONCLUSION

For the foregoing reasons, the petition for a writ of habeas corpus is **DENIED**. The clerk shall close the file.

**IT IS SO ORDERED.**

Dated: October 6, 2006.

PHYLLIS J. HAMILTON
United States District Judge

G:\PRO-SE\PJH\HC.03\LAYMAN121.RUL

8